BENSHOOF v. CONN et al.

No. 33879. March 27, 1951.
Rehearing Denied April 17, 1951.

*229 P. 2d 896.*

Tolbert & Gillespie, Hobart, for plaintiff in error.

Percy Hughes, Hobart, for defendants in error.

LUTTRELL, V.C.J. This action was brought by Glenn Conn, and Fred Conn, a minor, by his next friend, Glenn Conn, to recover from the defendant Dean Benshoof money belonging to the plaintiffs advanced or loaned to the defendant by their mother, the wife of de-

fendant. Originally the action was filed against both the defendant and his wife Edna Benshoof, the mother of plaintiffs, but at the trial the action was dismissed as to the mother, and she was by amendment made party plaintiff and sought to recover a portion of the money so advanced to her husband which belonged to her. A the close of the evidence the trial court rendered judgment against Edna Benshoof and dismissed her out of the action, but submitted the cause between the plaintiffs and the defendant to a jury, which rendered a verdict for plaintiffs. Defendant appeals.

There seems to be no substantial dispute as to the facts. From the pleadings and evidence it appears that the father of the plaintiffs died leaving property, including a $1,000 insurance policy, of the value of approximately $2,100; that the insurance money was collected by the widow, who was the sole beneficiary of the policy, and the other property belonging to the estate was sold and the money received and held by the widow, who, with the two children, the plaintiffs in this action, were the sole surviving heirs of the husband and father. No guardian was ever appointed for the children, who were minors, but the money was held by Edna Benshoof and was in her account at the time she married the defendant in 1941. Edna Benshoof was the principal witness for the plaintiffs, although she was at the time the wife of the defendant, and the defendant made timely and proper objection to her testifying against her husband. She testified that shortly after her marriage to defendant she, at his solicitation and request, advanced him various sums of money until the funds in her account, amounting as aforesaid, to approximately $2,100, were practically exhausted; that the defendant understood that two-thirds of this money belonged to plaintiffs and one-third to her, and that he promised to deed her, as security therefor, 40 acres out of the 200-acre farm owned by him. She testi-fied that the money was used mostly for improving the farm, or in connection with the farm, a portion of it being used to pay amounts due on a mortgage thereon. She testified that her husband told her to keep books on the amounts she advanced to him, and that acting on his request she did so, and at the trial of the case produced canceled checks and a record of advancements made to substantiate her statements as to the amounts advanced to defendant. From her testimony it appears that defendant failed and refused to deed her the 40 acres of land as security for the money advanced, and that as a result of the insistence on her part that this be done, and his refusal, trouble arose between the parties and a divorce suit was filed, apparently by defendant; that thereafter the action was dismissed and the parties entered into a written agreement, which is shown in the record, signed by both in the presence of witnesses, which recited that in settlement of the dispute between them they agreed to become cosigners of notes in such amount as was necessary "to pay off the proportionate amount that may become due to Glenn C. Conn and his brother Fred M. Conn out of their father's inheritance as they come of age"; that at the same time notes for $475 each were made out to the two boys and signed by both her and her husband, and delivered to her; that she kept them in the house, but afterwards, while she was absent on a visit to her sister, they were taken from the place where she kept them and she was never able to find them. Why the notes were made for $475 each instead of the correct amount is not clearly disclosed by her testimony. The witness testified that she submitted a copy of this agreement to Glenn Conn, the older of the children, and Glenn testified that she showed him the original and that he understood that he could get the money any time he desired after he reached his majority, which he did in 1946. He further testified that after he reached his majority he requested de-

fendant to pay him his share of the money, as he needed it, and that the defendant told him to "go to the devil".

The defendant was placed on the witness stand by his attorney and questioned briefly. When asked by his attorney if he was married to Edna Benshoof, he stated that he could not give a definite answer, but that she was the woman he had been living with. Questioned as to whether he had ever requested Edna Benshoof to make a loan of money belonging to Glenn Conn and Fred Conn to him, he testified that he did not remember, and when asked if he had anything to do with any money belonging to plaintiffs he stated that he did not remember it. Thereupon his counsel did not further examine him.

Defendant contends that because of the provisions of 12 O.S. 1941 §385, subd. 3, the witness Edna Benshoof was an incompetent witness, it not being shown that she was the agent of the defendant, and there being no joint interest. The subdivision relied upon reads as follows:

"The following persons shall be incompetent to testify: . . .

"Husband and wife, for or against each other, except concerning transactions in which one acted as the agent of the other, or when they are joint parties and have a joint interest in the action; but in no case shall either be permitted to testify concerning any communication made by one to the other during the marriage, whether called while that relation subsisted, or afterwards."

In support of this contention he cites Goldsmith v. Owens, 180 Okla. 268, 68 P. 2d 849; Wood v. Livingston, 93 Okla. 72, 219 P. 377, and Green v. Blancett, 179 Okla. 483, 66 P. 2d 911. He asserts that from the evidence it clearly appears that Edna Benshoof could not have been her husband's agent in any respect in this transaction; that she did not act as between him and a third party, but simply loaned him her own funds, and that in such case there could be no agency.

We do not agree with this contention. As shown by the record in this case, Edna Benshoof, near the close of the case, relinquished any claim to her money as against the defendant and was dismissed out of the action, but the money belonging to her children, although held in trust by her for them, was their property. Therefore, when at the request of her husband she kept the books as to the moneys advanced, we think she was acting as his agent, and was competent to testify to the amounts advanced to him, as reflected by the record so kept, since as to that portion of the money belonging to her children the record was a record kept for her husband as between him and a third party.

In Western National Life Ins. Co. v. Williamson-Halsell-Frazier Co., 37 Okla. 213, 131 P. 691, we held that a wife who assisted her husband in taking an inventory of the stock of merchandise in his store was competent to testify concerning the inventory as against the insurance company, since in taking the inventory she acted as her husband's agent. For the same reason we think Edna Benshoof could testify as to the amounts advanced to her husband as shown by the record kept by her.

The record in this case further discloses that at the time Edna Benshoof and her husband settled their dispute, including a divorce suit which was apparently then pending, they executed a settlement agreement containing the following provision:

"First, That we here and now agree at once xxxx become cosigners of notes in such amount as may be necessary to pay off the proportional amount that may become due to Glenn G. Conn and his brother Fred M. Conn out of their Father's inheritance, as they come of age."

This agreement was signed by both the parties in the presence of witnesses and delivered, with the notes executed in connection therewith, to Edna Ben-

shoof, to be retained by her, and it was by her exhibited to her oldest son. This memorandum was an admission by defendant of an indebtedness to the children, although the amount was not specified, and in retaining the memorandum and the notes she apparently acted both for herself and as agent for her husband. Benshoof in his testimony did not deny that he executed this paper, nor did he deny that at his request his wife kept a record of the amounts advanced by her to him. Nor did he deny that he knew at the time these advancements were made that two-thirds of the money so advanced belonged to her children. Under these circumstances, we have concluded that she was a competent witness to testify to the amount of the children's money advanced to him, and to his promise to repay. While it may be that some of her testimony, strictly speaking, was not admissible, we think the testimony above set forth was sufficient to justify the verdict of the jury, and to render the error, if any, in permitting her to testify that her husband promised to give her security and for what purposes the money was used, harmless.

After the verdict of the jury had been returned defendant filed a motion for new trial and supplemental motion setting up newly discovered evidence. To the latter motion was attached an affidavit by Edna Benshoof stating that when she testified that the insurance policy in which she was sole beneficiary belonged to the estate she was ignorant of the law, and through mistake testified that the proceeds of that policy were a part of the estate of her deceased husband, and that since the verdict was returned she has discovered that she was in error in that statement, and that the proceeds of the insurance policy were her separate property; that after deducting the amount of this $1,000 policy from the estate the amount left which would belong to the plaintiffs would be the sum of $570, which she was willing to pay to them. The trial court denied this motion, and defendant contends that it erred in so doing, citing the rule laid down in Lake v. Bridges, 180 Okla. 442, 70 P. 2d 82, that the newly discovered evidence must be such as will probably change the results of the trial, and must have been discovered since the trial. We think the testimony of the witness, if given at another trial, would not, in view of her testimony at the trial, be sufficient to change the result. At the trial she testified that, while the policy was made to her as sole beneficiary, her husband repeatedly told her that he had taken the policy out for her and the children, and that she did not regard it as her personal property, but considered that it belonged to the estate. It is reasonably apparent that her affidavit, made after she was examined and cross-examined in reference to this policy, was made for the purpose of placating her husband, and merely contradicted the evidence which she gave at the trial. In Belford v. Allen, 183 Okla. 256, 80 P. 2d 671, and other cases, we have held that newly discovered evidence which only impeaches or contradicts former evidence does not justify the granting of a new trial, and we have further held in numerous cases that the overruling of such motion for new trial must be shown to be an abuse of discretion before we will reverse the action of the trial court. Missouri, K. & T. Ry. Co. v. Embrey, 168 Okla. 433, 33 P. 2d 481. The trial court did not err in denying the motion for new trial.

Defendant also contends that the evidence shows that the claim of plaintiff Glenn Conn, who reached his majority on January 14, 1946, and did not file this action until July 3, 1947, was barred by the statute of limitation. We are unable to agree with this contention. The memorandum hereinabove set forth was executed by the defendant and Edna Benshoof in 1945. 12 O. S. 1941 §101 provides as follows:

"In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby."

While the memorandum did not recite the amount due it· was nevertheless a sufficient acknowledgment of the debt to toll the statute under our decision in Stone v. Smoot, 191 Okla. 512, 131 P. 2d 85. Since the agreement in connection with the making of the loan was not reduced to writing, plaintiff Glenn Conn was entitled to bring his action within three years from the execution of the memorandum. 12 O.S. 1941 §95, subd. 2.

In his last contention defendant asserts that the trial court erred in refusing to instruct the jury, as requested by him, that estates of decedents were under the jurisdiction of the county court, and that estates of minors were under the authority of the county court, and that one who takes charge of property of minors without court authority is responsible to the legal . heirs, who could require an accounting within one year after reaching majority, and that if the jury found from the evidence that either plaintiff had an adequate remedy at law against any such person, their verdict should be for defendant. Since the proof established that defendant had received and was in possession of the money belonging to plaintiffs, and did not show that the mother of plaintiffs was at that time possessed of any property, real or personal, we are unable to see wherein the trial court erred in refusing to give the instruction.

Affirmed.